UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **886 JOHNSON FERRY ROAD HOLDINGS, LLC,** | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | CIVIL ACTION FILE |
| **TERRACE EAST COBB PROPCO (SL-VI) LLC,** | ) ) ) ) | NO. _____ |
| Defendant. | ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
EMERGENCY MOTION FOR APPOINTMENT OF A
RECEIVER AND FOR RELATED INJUNCTIVE RELIEF**

Plaintiff, 886 Johnson Ferry Road Holdings, LLC ("**Lender**"), files this memorandum of law in support of the emergency motion for the appointment of a receiver for the Arbor Terrace of East Cobb apartments, an assisted living and memory care senior community, located at 886 NE Johnson Ferry Road, Marietta, Georgia 30068 (the "**Propert**y"), which is owned by Terrace East Cobb Propco (SL-VI) LLC ("**Borrower**"), and for related injunctive relief, as described and supported by the Verified Complaint for Damages, Appointment of Receiver, and Injunctive Relief ("**Verified Complaint"**) and the Affidavit of Ariel Levin (the "**Levin Affidavit**" or "**Levin Aff.**"), filed contemporaneously herewith.

## I. INTRODUCTION

The Property is a 90-unit assisted living and memory care senior community owned and operated by Borrower.  Borrower financed its ownership of the Property, as memorialized by certain Loan Documents (defined below).  Borrower has defaulted on its payment obligations under the Loan Documents, resulting in this action for damages and motion for the expedited appointment of a temporary receiver, to which Borrower has expressly consented in a signed writing.

Borrower's conduct and the current circumstances threaten to irreparably harm Lender's interest in the Property.  Specifically, Borrower is in default under the governing loan documents, Borrower is unable to pay its debts as they mature, and Lender has no adequate remedy at law to recover the losses.  Further, the Property is a senior housing community that provides assisted living and 24-hour care for seniors living with Alzheimer's and other types of dementia.  It is important that the residents and their family members are assured that their health and welfare is being properly handled and that there will be no disruption to their care both before and during the pendency of any foreclosure.

The appointment of a receiver is therefore important for Lender to gain control of the Property; to provide an effective, experienced decision-maker for the coordination and performance of the Property's assisted living and memory

care environments; to ensure that the residents of the Property continue to receive care; and to preserve, protect, collect and ultimately sell the Property in an orderly and professional manner to maximize its value.

## II.   FACTUAL BACKGROUND

### A.   The Loan and the Loan Documents

The detailed facts relating to Lender's claim and the basis for Lender's request for the appointment of a receiver and injunctive relief are contained in the Verified Complaint and incorporated herein by reference. The following is a high-level summary of the relevant facts.

On or about September 22, 2016, CBRE Capital Markets, Inc. ("**Original Lender**") issued to Borrower a commercial mortgage loan in the principal amount of $19,000,000.00 (the "**Loan**"). Levin Aff. ¶ 15. The Loan is evidenced by a Multifamily Note effective September 22, 2016 (the "**Note**") and a Multifamily Loan and Security Agreement – Seniors Housing dated as of September 22, 2016 (the "**Loan Agreement**"). *See* Levin Aff. ¶¶ 15-16, Exs. 2 and 3. To secure repayment on the Note, Borrower executed in favor of Original Lender a Multifamily Deed to Secure Debt, Assignment of Rents and Security Agreement

effective as of September 22, 2016 (the "**Deed to Secure Debt**").[1]  *See* Levin Aff. ¶ 11, Ex. 1.  Section 3(c)(ii) of the Deed to Secure Debt provides that:

> [I]f an Event of Default has occurred and is continuing, regardless of the adequacy of Lender's security, without regard to Borrower's solvency and without the necessity of giving prior notice (oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in the preceding sentence. ***If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Instrument, expressly consents to the appointment of such receiver***, including the appointment of a receiver *ex parte* if permitted by applicable law.

*See* Levin Aff., Ex. 1 § 3(c)(ii) (emphasis added).

Original Lender assigned assign all of its rights, title, and interest in and to the Property, as reflected in the Loan Documents, to the Federal Home Loan Mortgage Corporation ("**FHLMC**").  Levin Aff. ¶ 17, Ex. 4.  FHLMC subsequently transferred all of its rights, title, and interest in and to the Property to U.S. Bank National Association, as Trustee for the registered holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2017-K725 (the "**Trustee**").  *Id*. ¶ 18, Ex. 5.  The Trustee

---

[1] The Loan Agreement, the Note, and the Deed to Secure Debt and any and all other documents executed in connection therewith and/or relating in any way thereto are referred to herein and hereinafter either individually, or collectively, as the "**Loan Documents**."

subsequently transferred all of its rights, title, and interest in and to the Property to Lender. *Id.* ¶ 20, Exs. 6 and 7. Lender is now the owner and holder of the Loan and Loan Documents and is entitled to enforce the terms and conditions of the Loan Documents. *Id.* ¶¶ 20-21.

**B.     Borrower's Default Under the Loan Documents**

The Note has required at all relevant times that "[a]ll remaining Indebtedness, including all principal and interest, will be due and payable by Borrower" on October 1, 2023, which is defined in the Note as the Maturity Date. *See* Levin Aff., Ex. 3 § 3(h). The Loan Agreement defines an Event of Default to exist if "Borrower fails to pay or deposit when due any amount required by the Note, th[e] Loan Agreement or any other Loan Document." *See* Levin Aff. ¶ 23, Ex. 2 (Loan Agreement) § 9.01(a). Borrower failed to repay the outstanding principal balance of the Loan on or before October 1, 2023 (the Maturity Date), which constitutes an Event of Default under Section 9.01(a) of the Loan Agreement. *Id*.

Despite receiving notice of its Event of Default, Borrower has failed to repay all of the outstanding Indebtedness under the Loan Documents or otherwise cure the ongoing Event of Default. Levin Aff. ¶ 26. Since the Event of Default, Lender has negotiated in good faith with Borrower regarding a potential commercial

resolution of this dispute, but those discussions have been unsuccessful. Compl. ¶ 38.

As of the date of the filing of the Verified Complaint, Borrower is indebted to Lender for an amount in excess of $6,474,555.76. Compl. ¶ 39. Lender is therefore ready to pursue its available remedies, including the right to apply for the appointment of a receiver and foreclose on the Property.

### III.     ARGUMENT AND CITATIONS OF AUTHORITY

Rule 66 of the Federal Rules of Civil Procedure governs the appointment of a receiver in diversity jurisdiction cases. Federal courts apply federal common law in determining whether the appointment of a receiver is appropriate and the decision to appoint a receiver is in the sound discretion of the Court. *Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1292 (11th Cir. 1998); *see also* FED. R. CIV. P. 66. A court should appoint a receiver where the appointment is "a remedy auxiliary to some primary relief which is sought and which equity may appropriately grant," *Otero v. Vito*, 2008 WL 4004979, at *2-3 (M.D. Ga. Aug. 25, 2008), such as where a receiver is appointed to "prevent injury to the thing in controversy and to preserve it . . . for the security of all parties in interest . . . ," *Bookout v. Atlas Fin. Corp.*, 395 F.

Supp. 1338, 1342 (N.D. Ga. 1974), *aff'd sub nom. Bookout v. First Nat'l Mortg. & Disc. Co.*, 514 F.2d 757 (5th Cir. 1975).

This Court should enter the Receivership Order attached as **Exhibit A** to this Motion and appoint a receiver over the Property because (a) Borrower expressly consented to the appointment of a receiver in the Loan Documents and (b) even if Borrower had not consented, Lender is entitled to the appointment of a receiver under federal common law.

### A. Borrower Consented to the Appointment of a Receiver Under the Loan Documents

Lender is entitled to the appointment of a receiver because there was an Event of Default and Borrower consented to the appointment of a receiver under Loan Documents. Courts have recognized that "the existence of an express contractual right to appointment of a receiver, coupled with 'adequate prima facie evidence of a default,' can be sufficient to warrant such an appointment" of a receiver. *Pioneer Capital Corp. v. Environamics Corp.*, 2003 WL 345349, at *9 (D. Me. Feb. 14, 2003).

It is undisputed an Event of Default occurred under the Loan Documents. *See* Compl. ¶ 35; Levin Aff. ¶ 23. Under the plain language of the Deed to Secure Debt, Lender is entitled as a matter of right to apply to any court having jurisdiction

for the appointment of a receiver for the Property following an Event of Default. Levin Aff., Ex. 1 § 3(c)(ii).  Moreover, Borrower has ***already expressly consented to the appointment*** by executing the Deed to Secure Debt.  *See id*. ("If Lender elects to seek the appointment of a receiver for the [] Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver ex parte if permitted by applicable law.").

"The importance of these contractual provisions cannot be underestimated." *Wells Fargo Bank, N.A. v. CCC Atl., LLC*, 905 F. Supp. 2d 604, 615 (D.N.J. 2012). Borrower's "affirmative consent in the Loan Documents to the appointment of a receiver weighs heavily towards finding such action justified." *Comerica Bank v. Everglades Dressage, LLC*, 2021 U.S. Dist. LEXIS 36927, at *6-7 (S.D. Fla. Feb. 28, 2021); *see also, e.g., 3376 Lake Shore, LLC v. Lamb's Yacht Ctr., Inc.*, 2014 U.S. Dist. LEXIS 192099, at *7 (M.D. Fla. Dec. 8, 2014) ("[T]he receivership provision in the Mortgage weighs heavily in favor of granting the requested relief."); *PNC Bank, N.A. v. Presbyterian Ret. Corp.*, 2014 WL 6065778, at *4 (S.D. Ala. Nov. 13, 2014) (holding that the consent provision is one that should be entitled

to "substantial weight"); *CCC Atl.*, 905 F.Supp.2d at 615 ("Under such circumstances, appointment of a receiver is not such a drastic remedy.").[2]

**B.     Borrower is Entitled to the Appointment of a Receiver Under Federal Law**

Beyond the contractual provisions, there are additional sufficient indicia warranting the appointment of a receiver under federal common law. Although "there is no precise formula for determining whether appointment is warranted," federal courts have identified several non-exclusive factors relevant to the determination, including: (i) whether the party seeking the appointment has a valid claim; (ii) the plaintiff's probable success in the action; (iii) whether the property is in imminent danger of being concealed, lost, or diminished in value; (iv) whether legal and less drastic remedies are adequate; and (v) whether appointing the receiver will do more good than harm.  See generally *BOKF, N.A. v. Gordon Jensen Health Care Ass'n*, 2021 U.S. Dist. LEXIS 48762, at *8 (S.D. Ala. Mar. 15, 2021); *Consol. Rail Corp. v. Fore River Ry. Co.*, 861 F.2d 322, 326- 27 (1st Cir. 1988).  The facts set forth in

---

[2] *See also D.B. Zwirn Special Opportunities Fund, L.P. v. Tama Broad., Inc.,* 550 F. Supp. 2d 481, 490 (S.D.N.Y. 2008) (holding borrower's consent under the loan documents "strongly supported" the appointment of a receiver), *aff'd sub nom. Cherry v. D.B. Zwirn Special Opportunities Fund, L.P.*, 433 F. App'x 870 (11th Cir. 2011).

Plaintiff's Verified Complaint establish that each of these factors weigh in favor of appointing a receiver in this case.

First, Lender has a valid claim against Borrower and is likely to succeed in the underlying action. It is undisputed that Borrower failed to repay the outstanding principal balance on the Maturity Date and is currently in default. Compl. ¶¶ 34-40; Levin Aff. ¶ 23. Because Borrower cannot "contest (1) that Defendant[] agreed to the appointment of a receiver in the event of a default on the Mortgage[] or (2) that default has occurred, [t]his weighs heavily in favor of appointing a receiver." *See Nissan Motor Acceptance Corp. v. Infiniti of Englewood, LLC*, 2023 U.S. Dist. LEXIS 145543, at *10 (D.N.J. Aug. 17, 2023) (finding "appointment of a receiver would no longer be a drastic remedy").

Second, the Property is in imminent danger of being damaged and diminished in value. Borrower's default under the Loan demonstrates that it lacks funds to operate the Property in a sufficient and appropriate way and to pay critical expenses as they become due. And because the present value of the Property does not exceed the value of Borrower's Indebtedness (Levin Aff. ¶ 25), Borrower has little or no financial incentive to maintain the Property, "making the situation ripe for abuse and waste." *See Branch Banking & Trust Co. v. McIntyre Land Co.*, 2020 U.S. Dist.

LEXIS 112924, at *7 (M.D. Ala. June 26, 2020); *Bank of Hope v. Dayk Enters.*, 2020 WL 8254488, at *4 (M.D. Ala. Dec. 4, 2020).

Third, less drastic remedies are inadequate here. The Loan, while secured by the Property, is nonrecourse. Because of the nonrecourse nature of the debt, the only avenue available to stave off harm to Lender and the Property's senior residents is through the Property itself, and monetary damages will not suffice to protect those parties. *See U.S. Bank N.A. v. Lakeview Retail Prop. Owner LLC*, 2016 WL 2599145, at *3 (S.D. Miss. May 5, 2016) (noting that nonrecourse debt weighs in favor of appointing a receiver to protect the property, as "monetary damages may not suffice").

Moreover, a money judgment is not an adequate remedy here because Borrower lacks the financial ability to repay the Indebtedness. Lender already has a first-priority lien on all of Borrower's assets and revenues and the best opportunity to be made whole is through the appointment of a receiver to stabilize, manage, and sell the Property in an orderly sales process. *See Otero*, 2008 WL 4004979, at *4 (appointing receiver because "available legal remedies and less drastic equitable remedies will not suffice to protect the interests of the Plaintiff and Defendants' creditors and to vindicate the authority of this Court and its judgment.").

Lastly, the appointment of a receiver is likely to do more good than harm. The legitimate business activities of this senior living facility, including important functions such as caring for seniors living with Alzheimer's and other types of dementia, can continue to take place under the receiver's supervision. The proposed receiver has significant experience and specialization in distressed senior assisted living and memory care environments and will be in the best position to ensure the residents of Property receive uninterrupted care and that any income-generating potential for the Property is fully realized. Levin Aff. ¶ 31. For example, a receiver will make sure the Property continues to be operated and managed by state licensed professionals before, during and after any foreclosure.

This outweighs any harm Borrower might face from the appointment of a receiver. *Deutsche Bank Tr. Co. Ams. v. Greenfield of Perkiomen Valley, LLC*, 2024 U.S. Dist. LEXIS 746, at *13 (E.D. Pa. Jan. 3, 2024) (concluding "that the balance favor[ed] appointing a receiver" over a senior living facility "[c]onsidering [borrower's] default, its contractual consent to receivership, and its mismanagement" of the property); *Otero*, 2008 WL 4004979, at *4 (finding that appointment of a receiver is more likely to do good than harm because while the receiver "will be empowered to manage and maintain all assets to preserve them for the benefit of all parties," defendants' "legitimate business activities . . . can continue to take place

under the Receiver's supervision" and "[a]ny activities of the Receiver that the parties find to be objectionable can be brought to the attention of the Court.").

C.    **The Court Should Appoint Matthew D. Mason as Receiver**

For the foregoing reasons, the Court should immediately appoint Mr. Matthew D. Mason of Riveron RTS, LLC ("**Riveron**"), 401 South Old Woodward Avenue, Suite 340, Birmingham, Michigan 48009 as receiver over the Property and give him the following powers, set forth more fully in the Order Appointing Receiver annexed hereto as **Exhibit A**, in order to protect the Property and the parties' interests in it pending the resolution of this dispute: to take charge of, keep possession of, control, maintain, secure, manage, and preserve the Property and to retain, hire or discharge employees, financial advisors, consultants, auctioneers, attorneys, investment bankers, and/or other professionals to assist with the discharge of his duties.

Mr. Mason has substantial experience as Riveron's management and receivership portfolio includes 200 properties throughout the United States. *See e.g., RSS CSMC2021-ADV-DE AUR, LLC v. Adventus US Realty #4 LP, et al.*, No. 1:23-cv-08231 (S.D.N.Y. Sept. 22, 2023), Dkt. 37 (appointing Mr. Mason as receiver to take possession and control of multiple properties located in the Northern District of Georgia). Mr. Mason himself is the practice leader of Riveron's Real Estate Advisory Group with over 21 years of experience in real estate and fiduciary

services roles. Riveron also has direct experience in receivership matters for three active senior housing receivership portfolios, totaling nearly 3,000 units across 56 properties in 18 states. A true and correct copy of Mr. Mason's biography is annexed to the Levin Affidavit as Exhibit 9.

### D.     Plaintiff is Entitled to Injunctive Relief Under Fed. R. Civ. P. 65 in Aid of the Receivership

Lender also respectfully requests the entry of injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure to assist the receiver in the performance of his duties and to ensure the effectiveness of the receivership order. The injunctive relief requested would require Borrower to cede to the receiver the authority to operate and preserve the Property for the benefit of Lender and the residents of the Property.

The prerequisites for a preliminary injunction are "(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest." *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983). "The purpose of a preliminary injunction is 'merely to preserve the relative

positions of the parties until a trial on the merits can be held.'"  *Id*. at 539-40 (citations omitted).

As explained more fully above and in the Verified Complaint, Borrower failed to repay amounts owing on the Maturity Date, resulting in an Event of Default under the Loan Documents.  There is a substantial likelihood of success by Lender on the merits of its breach of contract claim against Borrower. There is also a substantial likelihood of irreparable harm or injury to Lender if a receiver is not appointed because the value of the Property is continuing to diminish, and Plaintiff has no adequate remedy at law to protect against this loss.

Moreover, Lender's injuries if a receiver is not appointed will far outweigh the damage to Borrower because the injunction merely preserves and protects the Property and its senior residents.  Issuing an injunction will ensure the safety and well-being of the residents of the Property without interruption and permit the marketing and sale of the Property in accordance with applicable law and within the timeframe necessary to maximize the value of the Property. The injunctive relief requested is customary and supplements the powers granted to the receiver. *See, e.g., S.E.C. v. Byers*, 592 F. Supp. 2d 532, 536 (S.D.N.Y. 2008), *aff'd*, 609 F.3d 87 (2d Cir. 2010) (reviewing circuit court authority and concluding that injunctive relief to prevent creditors from interfering with receivership assets is appropriate).

Accordingly, Lender respectfully requests that the Court enter the Receivership Order in substantially the form attached hereto as **Exhibit A**.

### IV. LENDER IS ENTITLED TO AN IMMEDIATE HEARING ON ITS MOTION

For the reasons stated above, good cause exists for granting Lender an immediate hearing based on the real and likely threat of immediate and irreparable harm to the Property and the absence of any prejudice to Borrower. Local Rule 7.2(B) provides, in relevant part, that "[u]pon written motion and for good cause shown, the Court may waive the time requirements of [Rule 7.1] and grant an immediate hearing on any matter requiring such expedited procedure," provided that the motion "set[s] forth in detail the necessity for such expedited procedure." N.D. Ga. R. 7.2(B).

The appointment of a receiver is important to stabilize and market the Property to potential purchasers through an orderly sale. In addition to the economic and legal arguments presented above, the residents of the Property will stand to benefit the most from an expedited appointment. The proposed receiver is a turnaround professional with experience in distressed senior housing and assisted living facilities and would be in the best position to ensure the residents of the Property receive continuous care before, during and after any foreclosure.

Borrower has been fully informed before the filing of the Verified Complaint and this Motion, including the relief sought therein, and received a draft receivership order substantially similar to the Receivership Order attached hereto.

## V.     CONCLUSION

For the above-stated reasons, Lender respectfully requests an expedited hearing and the entry of the Receivership Order in substantially the form attached to the Complaint as Exhibit H and hereto as **Exhibit A**.

Respectfully submitted, this 13th day of May, 2024.

/s/ *Christopher A. Riley*
Christopher A. Riley
Georgia Bar No. 605634
Blake M. Simon
Georgia Bar No. 894927

ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
404-881-7000 (telephone)
404-881-7777 (facsimile)
chris.riley@alston.com
blake.simon@alston.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **886 JOHNSON FERRY ROAD HOLDINGS, LLC,**  )<br><br>Plaintiff,  )<br><br>vs.  )<br><br>**TERRACE EAST COBB PROPCO (SL-VI) LLC,**  )<br><br>Defendant.  ) | **CIVIL ACTION FILE**<br><br>NO. _____ |

## LOCAL RULE 7.1D CERTIFICATION

In accordance with L.R. 7.1D, the undersigned counsel hereby certifies that, consistent with L.R. 5.1B, the foregoing document was prepared in Times New Roman font, 14 point.

                                            */s/ Christopher A. Riley*
                                            CHRISTOPHER A. RILEY