# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **886 JOHNSON FERRY ROAD HOLDINGS, LLC,**  Plaintiff,  vs.  **TERRACE EAST COBB PROPCO (SL-VI) LLC,**  Defendant. | CIVIL ACTION FILE  NO. 1:24-cv-02088-WMR |

## ORDER APPOINTING RECEIVER

Plaintiff, 886 Johnson Ferry Road Holdings, LLC ("**Lender**"), seeks appointment of a receiver for Arbor Terrace at East Cobb, a 90-unit senior assisted living and memory care facility, with an address of 886 NE Johnson Ferry Road, in Marietta, Cobb County, Georgia (the "**Property**"), which is owned by Defendant Terrace East Cobb Propco (SL-VI) LLC ("**Borrower**").[1]

The Court has reviewed the papers filed in this matter and has heard any statements offered by counsel and rules as follows:

1.  The Court finds that the appointment of a receiver for the Property, as defined in the Complaint, to include the personal property and general intangibles

---

[1] Capitalized terms not immediately defined shall have the meaning ascribed in Plaintiff's Verified Complaint (the "**Complaint**").

1

referenced and described in the Deed to Secure Debt, and as further described in Exhibit A to this Order, is proper for good cause shown.

2.     Mr. Sal Thomas of Tarantino Properties, Inc., 7887 San Felipe, Suite 237, Houston, Texas 77063 possesses the necessary qualifications, is not a party, attorney, or other person interested in this action and is hereby appointed receiver of the Property ("**Receiver**").

3.     Receiver is authorized, in the exercise of his discretion, and subject to control of this Court and the laws regarding receivership, to do any and all acts necessary for the proper and lawful conduct of the receivership.  Specifically, the following orders are entered:

    (a)     **Appointment of Receiver.**  Receiver is appointed to act and serve as receiver with respect to the Property, with respect to income (of any kind) therefrom, whether now existing or hereafter collected, and with respect to any and all other property and property interests pledged or assigned to Lender under the Loan Documents on or in which Lender holds a lien or security interest under the Loan Documents or in which Lender otherwise has an interest under the Loan Documents;

    (b)     **Receiver's Exclusive and Complete Control over the Property**.  Receiver is authorized to take and have complete and exclusive control and possession of the Property, together with any and all bank accounts, credit card receipts, demand deposits, reimbursement rights, bank deposits, security deposits and all other forms of accounts, accounts receivable, payment rights, cash and cash equivalents related to the Property, along with any and all information necessary to operate the Property, including, but not limited to, all security codes, combinations, passwords and other access codes related to the Property, and all other

collateral securing the indebtedness owed to Lender pursuant to the Loan Documents;

(c) **Items to be Delivered to Receiver by Borrower**. Borrower and all persons acting under its direction, including any agents of Borrower (including any property manager), are ordered to deliver possession of the Property to the Receiver, including all property-related information, without any right of offset or recoupment, along with all other collateral securing the indebtedness owed to Lender pursuant to the Loan Documents, including, but not limited to the following material: (i) all Property-related information and YARDI, or other property management database files; (ii) cash collateral (whether consisting of cash on hand, cash in any and all bank accounts or other accounts, all rights to security deposits, including, but not limited to, amounts that Borrower or its agents may have deposited with utility companies, and all other cash and cash equivalents) related to the Property; (iii) all keys and key cards related to the Property; (iv) all loans and communications and correspondence files relating thereto; (v) security deposits; rent; prepaid rent; other sums relating to the use, enjoyment, possession, improvement, or occupancy of all or any part of the Property; and any accounts of any of the foregoing; (vi) all leases and tenant files in effect with respect to the Property; (vii) any and all accounts receivable and accounts payable reports related to the Property; (viii) a current list of occupants of the Property; (ix) any and all contracts in effect with respect to the Property and all communications and correspondence pertinent thereto; (x) any and all contracts, bids, or other materials relating to any contractor work at the Property; (xi) any and all payroll records, employee files, applications, and other materials relevant to those persons employed by Borrower at the Property or the related third-party contract related to a third-party manager; (xii) any and all insurance policies and certificates, maintained by Borrower, covering the Property, and all communications and correspondence pertinent thereto; (xiii) records showing any insured losses to the Property in the past five years; (any and all bank statements relating to any accounts associated with the Property; (xiv) any and all operating reports and financial information pertaining to the management and operation of the

3

       Property for 2023 and year to date 2024; (xv) titles to all vehicles owned by Borrower operated in connection with the Property; and (xvi) any and all other records pertaining to the management and operation of the Property, including all records related to construction work at the Property, to the extent such records are maintained;

(d) **Borrower's Actions**.  Borrower, its agents, its general and limited partners, and any persons acting under Borrower's direction (including any property manager) are (i) directed to deliver the Property to Receiver; (ii) enjoined from in any way disturbing the possession of the Property or other property that is the subject of this Order; (iii) prohibited and restrained from disposing of or misappropriating the Property or other such property; (iv) prohibited from taking any actions that would, directly or indirectly, have a material adverse impact on the value of the Property; (v) prohibited and restrained from canceling, reducing, or modifying any and all insurance coverage in existence with respect to the Property, unless directed to do so by the Receiver; (vi) prohibited and restrained from collecting any rents, profits, or proceeds from the Property, or other sums due to Borrower or its agents, all until further order of the Court; (vii) prohibited and restrained from transferring, selling, assigning, revoking, returning, terminating, or canceling any license, privilege or right necessary for the business of the Property; (viii) directed to disclose to the Receiver any personal property and/or any furniture, fixtures, and/or equipment that has been removed from the Property in violation of the Loan Documents; and (ix) directed to prepare and submit documents (or directed to require the existing property manager to take such action) required for Receiver to succeed to the interest of Borrower and/or the existing property manager with respect to all permits and licenses associated with operating the Property;

(e) **Receiver's Right to Prevent Waste of, and to Preserve, the Property**.  Effective immediately, subject to the availability of funds, Receiver is ordered to take any and all actions Receiver deems reasonable and appropriate to prevent waste of the Property and to preserve, secure, manage, maintain, and safeguard the Property and all other forms of property to which

Receiver is entitled to take possession and control under this Order;

(f) **Receiver Vested with the Information Related to the Property**. Receiver is vested with the books and records of Borrower and its agents with respect to operation of the Property and other property subject to this Order, including any and all information related to: (i) rent rolls and leases affecting the Property; (ii) amounts paid by tenants and other obligors of Borrower; (iii) liens, encumbrances, and other interests against or affecting the Property; (iv) real and personal property taxes owed by Borrower or its agents, including the status of any tax appeal; (v) all types of insurance policies in effect with respect to the Property; (vi) plans, specifications, surveys, and drawings of the Property; (vii) access codes to the Property; (viii) all operating and bank statements of Borrower or its agents; and (ix) all other aspects of the Property;

(g) **Receiver's Right to Manage, Maintain, and Operate the Property**. Subject to any State and Federal laws and regulations, Receiver is authorized to manage and operate the Property, to market and make the Property available for tenants, and to employ such managers, agents, contractors, employees, servants, accountants, and attorneys as may in Receiver's judgment be advisable or necessary in the management, conduct, control, or custody of the affairs of the Property; is authorized to make (or not make, if the Receiver deems it justified) payments and disbursements in the ordinary course of business and to make such payments and disbursements as may be needed and proper for the preservation of the Property and other property of Borrower or its agents; and is directed to pay, on a monthly basis, Net Income[2] from the Property to Lender, in reduction of the indebtedness owed to Lender by Borrower; specifically, but without limitation, Receiver is authorized to engage professional property management ("**Receiver's Property Manager**"), if Receiver deems it appropriate, as property manager to manage

---

[2] **"Net Income"** means income after operating expenses and does not include (a) debt service payments to Lender due and owing under the Loan Documents; and (b) a reasonable reserve for working capital.

5

the day-to-day operations of the Property and, if Receiver deems it to be in the best interest of the Property, to employ the employees located on site at the Property. Receiver is authorized to terminate the agreement with existing property management, consistent with the terms of that agreement;

(h) **Receiver Authorized to Sell the Property**. With the approval of the Court and the Lender, Receiver is hereby authorized to take any and all actions necessary to effectuate a sale of the Property in good faith, whether together, individually, or in any combination, with or without an assignment and assumption of the Loan and the Loan Documents, including, but not limited to, engagement of broker(s), entering into a Purchase and Sale Agreement and other related documents on terms approved by Lender. Receiver shall provide notice to Borrower and Lender of Receiver's intention to market the Property for sale, and shall provide marketing and sale materials to Borrower and Lender upon request. Nothing stated herein shall preclude Lender from electing to post the Property for nonjudicial foreclosure sale and conducting that sale in good faith, without prior permission from the Court, as provided in this Order;

(i) **Receiver's Authorization to Lease**. Receiver may negotiate with any and all persons concerning the leasing and/or occupancy of the Property, including all personal property and/or collateral used in, or associated with, the ownership and operation of the Property or any portion or portions thereof;

(j) **Receiver's Right to Collect Amounts Due**. Receiver is authorized to receive and collect any and all sums due or owing to Borrower in any manner related to the Property, including any rents and revenues from the Property, whether the same are now due or shall hereafter become due and owing, to deposit such sums into an account established and maintained by Receiver, without regard to any cash management agreement between Lender and the Borrower, and to expend sums on the operation and management of the Property, as is necessary and appropriate, in the ordinary course of business;

(k) **Legal Actions Related to the Property**. Receiver is authorized to institute, prosecute, defend, compromise, dismiss, and/or

6

    intervene in, or become a party to, such actions or proceedings in state or federal courts, or any other proceeding, necessary for the protection, maintenance, and preservation of the Property in good faith and to carry out the terms of this Order in good faith, including but not limited to, the removal of residents or other persons from the Property, and/or defense against any action brought against Receiver acting in such capacity. Receiver is authorized to hire legal counsel in good faith and to pay his legal counsel reasonable fees to represent the Receiver and the Receiver's Property Manager in matters directly related to the receivership and operation of the Property;

(l)  **Insurance**. Receiver and/or Receiver's Property Manager are authorized to maintain appropriate property insurance for the Property, public general liability insurance, worker's compensation insurance, fire and extended coverage insurance, employer's liability insurance, employment practices insurance, liquor liability insurance, non-owned auto umbrella insurance, burglary and theft insurance, and other types of insurance normally obtained in connection with the operation and management of the Property; and is authorized to continue any current policies in place and to purchase further insurance as Receiver deems appropriate; Receiver and Receiver's Property Manager shall be named insureds on all general liability policies. Notwithstanding anything contrary in this subprovision, Receiver may cancel any existing insurance policy for the Property solely covering the Property, but not any blanket policies maintained by Borrower or its affiliates, and any refund of premiums shall be paid to the Receiver;

(m)  **Payment of Property Taxes; Preparation and Filing of Tax Returns for the Property**. Receiver is authorized to pay all current and past due real estate taxes, personal property taxes, and any other taxes and assessments against the Property; provided that Receiver may pay real estate taxes, personal property taxes, and any other taxes or assessments that are past due as of the date of the Receiver's appointment in his sole discretion;

(n)  **Property-Related Taxes**. Receiver is authorized to prepare and file any sales, beverage, and occupancy tax returns with respect

to the Property, as may be required by law for the period of Receiver's operation of the Property; provided, however, Receiver is not responsible for the preparation of income tax returns for Borrower or any of its affiliates or to pay any such taxes for Borrower or any of its affiliates;

(o) **Property Protection Advances from Lender**. To the extent permitted under the Loan Documents, Receiver and Lender may enter into further lending transactions by which Lender may, in Lender's sole and absolute discretion, lend monies to Receiver (on a nonrecourse basis as to Receiver) to enable Receiver to perform its duties hereunder, which may be advanced pursuant to the applicable pooling and servicing agreement and the Loan Documents, and will be secured by the existing liens, security interests, terms, and provisions contained within the Loan Documents; Receiver and Receiver's Property Manager shall have no obligation to advance funds beyond revenues from the Property;

(p) **Agreements; Payment of Utilities; Maintaining the Property; Compliance with Laws**. Receiver and Receiver's Property Manager are authorized to: (i) negotiate and enter into new leases, occupancy agreements, temporary franchise and/or temporary license agreements, and contracts in the ordinary course of the business of the Property; (ii) modify or terminate existing leases, occupancy agreements, franchise and/or license agreements, property management agreements, and contracts in the ordinary course of the business of the Property; (iii) pay all utilities, expenses, and other obligations secured by the Property or which may give rise to liens on the Property, and all other outstanding obligations to suppliers and service providers in the ordinary course of business, including obligations incurred prior to the commencement of the receivership, so long as Receiver has determined that it is prudent to do so in order to maintain business relationships that are beneficial to the Property or the conduct of the receivership; (iv) make repairs necessary to the maintenance of the Property in order to preserve the Property in the ordinary course of business; and (v) subject to available funds, comply with all requirements and regulations applicable to the Property;

(q) **Application of Income from the Property**. Receiver is directed to apply income from the Property, subject to the lien and security interest rights of Lender, as follows: (i) Receiver's approved fees and expenses; (ii) the current operating expenses of the Property in the ordinary course of business; (iii) a reasonable reserve for working capital for the Property; (iv) on a monthly basis, to the obligations owed to Lender under the Loan Documents; and (v) such other obligations incurred;

(r) **Receiver's Cash on Hand**. Receiver is permitted to maintain sufficient cash on hand (in an amount to be agreed to between Receiver and Lender) to enable Receiver to meet the expenses set forth in this Order, the payment of which is authorized herein;

(s) **Payment of Property Expenses**. Receiver and Receiver's Property Manager are permitted to pay all expenses incurred with regard to the Property in the normal and ordinary course of business of the Property by Receiver on or after the date Receiver is appointed. Neither Receiver, nor Receiver's Property Manager, nor Lender shall be liable for any expenses incurred with regard to the Property prior to Receiver taking possession of the Property, nor shall Receiver or Lender be required to use any Property revenue or additional funds advanced by Lender or other revenues collected after Receiver takes possession of the Property in payment of such expenses. Notwithstanding the foregoing, Receiver may, in Receiver's discretion, pay those expenses that were incurred in the normal and ordinary course of business of the Property and that were incurred prior to Receiver taking possession of the Property, if, and only if, the payment of any such pre-existing expenses is necessary and critical to the ongoing operation of the Property (*e.g.*, utilities). It shall be incumbent upon Receiver, in Receiver's discretion, to make a determination as to which expenses, if any, incurred prior to the Receiver's taking possession of the Property, were incurred in the normal and ordinary course of business and the payment of which is necessary and critical to the ongoing operation of the Property. Receiver's determination of such is binding on the parties hereto. Otherwise, no pre-existing expenses shall be paid by Receiver without written approval by Lender or further order

of this Court. Receiver must operate in good faith when making any determinations under this paragraph 3(s);

(t) **Receiver's Authority**. The authority granted to Receiver herein is self-executing; and

(u) **General Authority**. The Receiver is authorized to take any and all actions necessary to preserve the income to and value of the Property; and to perform any other acts in regard to the Property as authorized by this Court.

4. At the request of Receiver and with at least five (5) business days' notice to Borrower and subject to check clearing for those checks written by Borrower prior to Receiver's appointment, any depositary institution holding funds related to the Property shall close accounts holding the Property's funds and transfer those funds pursuant to the Receiver's direction.

5. Receiver is authorized, subject to control of this Court, to do any and all of the above acts necessary to the proper and lawful conduct of the receivership.

6. To ensure the orderly operation of the receivership and maximize the value of the assets, Receiver shall do as follows:

(a) Receiver, his employees and retained professionals, including Receiver's counsel, shall prepare monthly statements of services rendered and time expended during the course of the receivership. Those periodic statements shall be filed with the Court and made available to the parties in this litigation within twenty (20) days of the end of the month to which the report relates. The periodic statements may be included in the monthly reports filed by the Receiver. The first monthly report shall be filed by the twentieth (20th) day of the second full month following appointment of Receiver.

      (b)    Receiver may pay the items stated in Receiver's monthly report in due course unless there is any objection by a party. If a party objects to a payment item in the Receiver's report, the objection should be set for hearing by the objecting party as soon as possible.

7. Receiver will, within thirty (30) days of qualification and appointment, file in this action an inventory of all property of which Receiver has taken possession. If Receiver subsequently comes into possession of additional property, Receiver will file a supplemental inventory as soon as practical.

8. Notwithstanding the foregoing, Lender shall be permitted, without prior permission, prior approval, or further order of this Court, to take such actions as are necessary to prepare to conduct and to a conduct non-judicial foreclosure sale (or sales, as appropriate) of the Property pursuant to the terms of the Loan Documents (defined in the Complaint) and applicable statutes, including, without limitation, posting notices of sale, sending notices and demand letters, if necessary, filing notices where and when required, and conducting non-judicial foreclosure sales of the Property on any statutorily authorized date, all in accordance with the Loan Documents and applicable statutes.

9. The Receiver shall maintain accurate accounting and other records of its activities in connection herewith and shall file reports detailing the results from operations of the Property as subsequently ordered by the Court.

10. In addition to any financial, operating, and other reports and information required to be delivered pursuant to the Loan Documents, Receiver shall deliver to counsel for Borrower and Lender and file in the record of the above-captioned case, no later than the twentieth (20th) day of each calendar month, beginning with the second full month following appointment of the Receiver, each of the following with respect to the immediately preceding calendar month, certified by Receiver as true, correct, and complete:

(a) a balance sheet, statement of income and expenses, statement of cash flows (each on a budget versus actual comparison basis) for the Property, and trailing twelve months profit and loss statements;

(b) for space leases, if any, a detailed rent roll for the Property showing the occupancy of the Property, name of each tenant and, for each tenant, the space occupied, the lease commencement and expiration dates, the rent payable, the rent paid to date and the security deposit being held for such tenant, and a leasing activity report for the Property in detail reasonably satisfactory to Lender;

(c) an aged payables report and an aged receivables report for the Property;

(d) a capital expenditure report for the Property;

(e) all bank statements with monthly reconciliations;

(f) within thirty (30) days of this Order, an annual budget for the Property; and

(g) anything else Receiver deems appropriate or necessary to keep the Court and the parties apprised as to the state of the Property.

11. No later than sixty (60) days after the date on which the last of the Property is transferred out of the receivership estate (via non-judicial foreclosure sale, note sale, or otherwise), Receiver shall deliver to Lender and file in the record of the above-captioned case, (i) a final report and accounting containing the information set forth in paragraph 10 of this Order, and (ii) a motion to formally discharge the Receiver from his duties pursuant to this Order. Receiver shall retain or be paid sufficient funds to pay final bills and expenses related to the Property. Receiver shall also have the right to apply to the Court for discharge of all duties under this Order.

12. Borrower and the acting property manager shall use commercially reasonable efforts, at no cost to Borrower, to cooperate with Receiver in adding Receiver, any management company retained by Receiver, and Lender, if necessary, as named insureds on any policy maintained by Borrower or such acting property manager as the case may be, and Lender as the loss payee, on all existing insurance policies, on any policy maintained by Borrower or such acting property manager as the case may be, relating to the operation and management of the Property including, but not limited to, fire, extended coverage, auto and van coverage, property damage, liability, fidelity, errors and omissions, and workers compensation, and modifying the policies, solely with respect to the Property, if deemed necessary by Receiver. Borrower and all persons acting under its direction (including any property manager)

are prohibited from canceling, reducing, or modifying any and all insurance coverage in existence with respect to the Property; provided notwithstanding anything to the contrary contained herein, Borrower shall not be required to renew any insurance with respect to the Property upon expiration of any existing policy occurring after Receiver's appointment.

13. No lien, claim, or other security interest in any property affected by this receivership will in any manner be affected by this Order. Any party's failure to oppose the appointment of Receiver, any party's consent to the appointment, or any party's procurement of the appointment will not constitute a waiver of any lien, claim, or right.

14. No person or any agent of any person with actual notice of this Order shall interfere with any property in the control of Receiver or subject to this Order, nor interfere with Receiver in the carrying out of any duty under this Order.

15. All third parties (including but not limited to financial institutions) in possession of assets subject to this Order are hereby ordered to turn over such assets to Receiver within five (5) business days of receipt of a copy of this Order.

16. If the debt held by Lender secured by the Property is sold or otherwise transferred to another lender or holder, Receiver may seek discharge from his duties as receiver from this Court.

IT IS SO ORDERED.

15

Signed this 29th day of May, 2024.

*William M. Ray II*

---
**WILLIAM M. RAY, II**
**UNITED STATES DISTRICT JUDGE**

15

Signed this 29th day of May, 2024.

*/s/ William M. Ray II*

---

**WILLIAM M. RAY, II**
**UNITED STATES DISTRICT JUDGE**

15

Signed this 29th day of May, 2024.

*/s/ William M. Ray II*

---

**WILLIAM M. RAY, II**
**UNITED STATES DISTRICT JUDGE**

# EXHIBIT A
## LEGAL DESCRIPTION

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Marietta, County of Cobb, State of Georgia.

ALL THAT CERTAIN TRACT or parcel of land, lying and being in Land Lot 68, 1st District, 2nd Section, Cobb County, Georgia, and being more particularly described as follows:

TO FIND THE POINT OF BEGINNING, start at the common corner of Land Lot 67, 68, 86 and 87, being an iron pin found (#4 rebar), proceed north 89 degrees, 04 minutes, 48 seconds west along the common line of Land Lots 67 and 68, a distance of 103.05 feet to an iron pin found (#4 rebar), thence proceed north 89 degrees, 49 minutes 46 seconds west a distance of 23.04 feet to an iron pin found and the POINT OF BEGINNING: proceed then south 03 degrees, 32 minutes, 52 seconds west to an iron pin found (#4 rebar), a distance of 230.02 feet, thence north 89 degrees, 49 minutes 44 seconds west to a concrete monument found and being the right of way line of Johnson Ferry Road a distance of 372.85 feet, then proceed along the right of way line north 03 degrees, 47 minutes 48 seconds east to a concrete monument found a distance of 230.08 feet, then leaving said right of way line south 89 degrees, 49 minutes 46 seconds east, a distance of 371.85 feet to the POINT OF BEGINNING.

CONTAINING an area of 1.963 acres.

TOGETHER WITH that certain Sewer Easement from Bobbie Berry dated August 22, 1996, recorded in Deed Book 9820, Page 18, Cobb County, Georgia records, as re-recorded in Book 9847, Page 433.

TOGETHER WITH that certain Sewer Easement from Olde Towne Colony Homeowners Association, Inc. dated October 14, 1996, recorded in Deed Book 9959, Page 146.

TOGETHER WITH that certain Drainage Easement from Richard Van Iderstyne dated July 19, 1996 recorded in Deed Book 9847, Page 440, Cobb County, Georgia records.